```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                          CHARLESTON

HAROLD DEAN STUMP, JR.,

       Plaintiff,

v.                                      CASE NO. 2:09-cv-00590

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
```

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§401-433, 1381-1383f.  Neither party has filed a brief in support of his position.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Harold Dean Stump (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on January 29, 2008, alleging disability as of August 1, 2005, due to back and leg injuries, including a bulging disc in his back, and arthritis. (Tr. at 113-15, 121-23.)  The claims were denied initially and upon reconsideration.  (Tr. at 47-51, 52-56, 65-67, 68-70.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 71, 74.)  The hearing was held on November 13, 2008, before

the Honorable Rossana L. D'Alessio. (Tr. at 24-42.) By decision dated December 23, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-23.) The ALJ's decision became the final decision of the Commissioner on April 30, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) On May 28, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe

impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f)(2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in

substantial gainful activity since the alleged onset date. (Tr. at 12.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic obstructive pulmonary disease, disc protrusion at L3-4 disc space level minimally impinging upon thecal sac, alcohol abuse, borderline intellectual functioning, and anxiety disorder, not otherwise specified. (Tr. at 12.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations, including those related to alcohol abuse. (Tr. at 15.) As a result, Claimant cannot return to his past relevant work. (Tr. at 15.) The ALJ concluded that Claimant could not perform jobs which exist in significant numbers in the national economy considering his substance abuse disorder. (Tr. at 16.)

    The ALJ further concluded that if Claimant stopped abusing alcohol, the remaining limitations would cause more than a minimal impact on Claimant's ability to perform basic work activities, and, therefore, Claimant would have some severe impairments. (Tr. at 16-17.) The ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.

(Tr. at 18.) The ALJ concluded that if Claimant stopped drinking, he could return to his past relevant work as a security guard. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the administrative hearing. (Tr. at 28.) Claimant completed the ninth grade. (Tr. at 29.) In the past, he worked as a security guard, on a conveyor belt for a mining machinery assembler and as a laborer. (Tr. at 30-38.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize the evidence of record from around the date of his onset in August 2006, forward, along with any relevant history.

The record includes treatment notes from New River Health Association dated February 15, 2001, through January 9, 2008. X-rays dated April 22, 2004, of Claimant's back reveal minimal degenerative changes with no radiographic evidence of an acute process. (Tr. at 249.) On July 26, 2004, Claimant was diagnosed with alcohol dependence, anxiety disorder, not otherwise specified, rule out panic disorder and depressive disorder, not otherwise specified. (Tr. at 243.) Claimant was prescribed Antabuse and encouraged to attend AA meetings. (Tr. at 243.)

X-rays of the lumbar spine on August 14, 2006, showed bilateral pars interarticularis defect at the L5 level with no evidence of spondylolisthesis. There were multilevel spondylitic changes present. (Tr. at 240.) On August 14, 2006, Claimant saw

Mary McKelvey, M.D. with complaints of chronic pain. He reported a history of alcohol abuse, but stated that he had not used alcohol in several years. Claimant had some pain on range of motion of his back and some pain on straight leg raising. Dr. McKelvey diagnosed chronic pain syndrome, probably related to arthritis and prescribed Lortab. (Tr. at 239.) On October 9, 2006, Claimant reported no new problems. Dr. McKelvey noted that Claimant's labs were normal, except for slightly increased hemoglobin. (Tr. at 238.) On December 8, 2006, Dr. McKelvey treated Claimant for arthritis and COPD. (Tr. at 237.) On March 7, 2007, Dr. McKelvey warned Claimant not to drink too much when taking Lortab. Claimant reported drinking two to three beers on a daily basis. (Tr. at 236.) Dr. McKelvey's impression was back pain, degenerative disc disease and COPD. (Tr. at 236.)

On June 7, 2007, Dr. McKelvey noted that Claimant "talked about disability today. I at this point do not have any real objective data that would make him a strong candidate. He is also in his 40s which is not generally associated with a favorable out come for disability status. We would need to get more information. He is simply saying that he cannot work when he has been doing jobs off and on since he has been here. At the present time I think he should try to continue to work." (Tr. at 235.) On September 7, 2007, Claimant continued to complain of back pain, and Dr. McKelvey recommended an MRI. Claimant reported smoking one to one and a

half packs of cigarettes per day. Dr. McKelvey stated that

> [i]t is looking like he is going to end up needing to file for disability. He was involved in making mining equipment but he is having a tough time doing physical labor. He actually only finished the ninth grade. He cannot fill out a job application. He is someone who would be disabled if he could not do manual labor. Will get an MRI to get more information. At present he is not able to do a full time job.

(Tr. at 233.) Dr. McKelvey diagnosed back pain, COPD and degenerative disc disease.

An MRI on September 19, 2007, showed mild diffuse disc protrusion at L3-L4 disc space level minimally impinging upon the thecal sac. There was no evidence of spinal stenosis or neural foraminal stenosis. (Tr. at 232.)

On January 9, 2008, Dr. McKelvey noted the results of Claimant's MRI. Dr. McKelvey gave Claimant a note so that he could get a medical card and start the process for applying for social security. Claimant reported drinking two to three beers per day, almost every day. (Tr. at 230.) The note of the same date states that Claimant is unable to do physical labor and only has an eighth grade education so he cannot do sedentary labor. Dr. McKelvey stated in the note that Claimant "needs a medical card [and] to apply for [social] security." (Tr. at 260.)

On March 14, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with occasional postural limitations and should avoid concentrated exposure to vibration and

8

hazards. (Tr. at 267-74.)

On July 2, 2008, Misti Jones-Wheeler, M.A. conducted a consultative mental examination at the request of the State disability determination service. Claimant denied any history of mental health treatment. (Tr. at 276.) Claimant reported a history of three DUIs with the last one three years ago. Claimant admitted last drinking alcohol a few days ago and stated that he had one to two beers. Claimant reported that it had been over a year since he was intoxicated. On the WAIS-III, Claimant attained a verbal IQ score of 66, a performance IQ score of 74 and a full scale IQ score of 67. Ms. Jones-Wheeler opined that the scores were an underestimate of Claimant's true abilities. She noted that Claimant reported struggling academically, but that he had always worked consistently and reported very few daily functioning deficits or history of difficulty with socialization. She opined that it was more likely that Claimant functions in the borderline range of intellectual ability. (Tr. at 278.) Ms. Jones-Wheeler diagnosed anxiety disorder, not otherwise specified and alcohol abuse on Axis I and deferred an Axis II diagnosis. (Tr. at 280.)

On July 9, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, with an occasional ability to climb ramps and stairs, and a need to avoid vibration and fumes, odors, dusts, gases and poor ventilation. (Tr. at 283-90.)

On July 29, 2008, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's borderline intelligence, anxiety, not otherwise specified, and substance addiction disorder resulted in moderate limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence and pace and that there were no episodes of decompensation. (Tr. at 291-304.)

The State agency medical Source also completed a Mental Residual Functional Capacity Assessment on which he opined that given Claimant's impairments listed above, including alcohol abuse, Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 306.)

The record includes additional treatment notes from Dr. McKelvey dated January 30, 2008, May 13, 2008, July 14, 2008, and September 15, 2008. Claimant's treatment and diagnoses are largely unchanged. (Tr. at 309-14.)

Analysis

The court finds that the ALJ's decision is supported by

substantial evidence. The ALJ followed the two-step analysis required for the evaluation of cases where alcoholism is a factor, as it is in this case. First, the ALJ must determine whether the claimant is disabled. See 20 C.F.R. §§ 404.1535(a) and 416.935(a) (2008). If the ALJ does conclude that the claimant is disabled, he must then ask whether alcoholism is a contributing factor to claimant's disability. Id. Alcoholism is a contributing factor if the claimant would not be disabled if he stopped drinking. See 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1).

In his decision, the ALJ found that Claimant had the severe impairments of COPD, disc protrusion at L3-4 disc space level minimally impinging upon thecal sac, alcohol abuse, borderline intellectual functioning and anxiety disorder not otherwise specified. When these impairments, including alcohol abuse, were considered, the ALJ determined that Claimant did not meet the listings, but that Claimant's residual functional capacity was reduced to light work, with (1) a limited ability to push and/or pull with the upper extremities; (2) a sit/stand option with alternating intervals of 30 minutes to relieve any discomfort; (3) an occasional ability to climb ramps and stairs, balance, stoop, kneel, crouch and crawl; (4) an occasional ability to be exposed to vibration and atmospheric conditions; (5) a need for oral instructions; and (6) a moderately limited ability to understand, remember and carry out detailed instructions, maintain attention

11

and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods. (Tr. at 14-15.)

With such limitations, the vocational expert testified that Claimant could not work. However, the ALJ found that if Claimant stopped abusing alcohol, Claimant would no longer have severe mental impairments, aside from borderline intellectual functioning. (Tr. at 16-17.)

Claimant's residual functional capacity would be reduced to light work, with a limited ability to push and/or pull with the upper extremities, that Claimant requires a sit/stand option with alternating intervals of 30 minutes to relieve any discomfort, that Claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, that he may only be exposed to vibration and atmospheric conditions on an occasional basis, and that he requires oral instructions. (Tr. at 18.) With these limitations, the vocational expert testified that Claimant could return to his previous work as a security guard. (Tr. at 22.)

The ALJ's findings are supported by substantial evidence. The evidence of record indicates that Claimant continued to abuse alcohol, despite his counsel's representations that he was not

using alcohol on a regular basis (Tr. at 28). At the administrative hearing, Claimant stated that he drank beer about a week ago and only drinks once a week. (Tr. at 34.) However, when the ALJ stated that the record indicated that Claimant reported to Dr. McKelvey in January of 2008, that he was having two to three beers per day (Tr. at 230), Claimant testified that he stopped drinking that amount only two to three weeks ago. Indeed, Claimant was diagnosed with alcohol abuse by Ms. Jones-Wheeler in July 2008, based on a long history of alcohol use, including DUIs, and Dr. McKelvey's treatment notes reveal a concern over Claimant's use of alcohol with the other medications he was taking and indicate consumption of alcohol on a regular basis as noted above.

The ALJ's determination that Claimant was disabled when considering his alcohol abuse is supported by substantial evidence, as is the determination that independent of the alcohol abuse, Claimant would not be disabled. Notably, Claimant has no treatment for mental health issues and the limitation of a need for oral instructions adequately accounts for any limitations in Claimant's borderline intellectual functioning.

Finally, the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2008); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir.

1996). The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 18-21.)

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: January 14, 2011

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge